```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-372-RJC
(3:08-cr-134-RJC-13)
```

| | |
|---|---|
| ALEXI RICARDO RAMOS, ) | |
| ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Response to Petitioner's Motion to Vacate, (Doc. No. 7).

I.  **BACKGROUND**

Petitioner Alexi Ramos was indicted by the Grand Jury for the Western District of North Carolina, along with 25 other individuals, in a 70-count indictment charging offenses related to their participation in La Mara Salvatrucha, also known as MS-13, one of the largest street gangs in the country and one that is comprised primarily of immigrants or descendants of immigrants from El Salvador. (Criminal Case No. 5:08-cr-20, Doc. No. 623: Third Superseding Indictment). Petitioner was charged with participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), which included, <u>inter alia</u>, acts that constituted other federal or state offenses, including murder, robbery, extortion, obstruction of justice, witness tampering, and drug-

trafficking conspiracy and substantive offenses.  Id. Additionally, Petitioner was charged with two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841; and using and carrying a firearm during and in relation to a drug trafficking offense and possessing a firearm in furtherance of such an offense, in violation of 18 U.S.C. § 924(c).  Id.

A little over a year after he was indicted, on July, 10, 2009, Petitioner entered a straight-up plea of guilty.  (Id., Doc. No. 597: Acceptance and Entry of Guilty Plea). This Court conducted a routine plea colloquy in accordance with Federal Rule of Criminal Procedure 11 for Petitioner and accepted his guilty plea as knowingly and voluntarily made.  (Id., Doc. No. 1287: Transcript of Plea and Rule 11 Hearing).  Before Petitioner's sentencing hearing, the probation office submitted a presentence report ("PSR").  (Id., Doc. No. 864: PSR).  In the PSR, the probation officer calculated a total offense level of 22 and a criminal history category of I, yielding an advisory Sentencing Guidelines range of between 41 and 51 months in prison as to the racketeering and drug-trafficking offenses.  (Id., Doc. No. 864 at 17; 21: PSR).  The probation officer also noted that Petitioner faced a mandatory consecutive term of at least 60 months in prison as to his § 924(c) firearm offense.  (Id., Doc. No. 864 at 21).  This Court conducted Petitioner's sentencing hearing on June 29, 2010.  During the hearing, Petitioner's trial counsel argued in favor of leniency, noting that Petitioner, while admitting that he was a member of MS-13, was indicted in relatively few counts and was not charged with a drug-trafficking offense or extortion.  (Id., Doc. No. 1288 at 4-5: Sentencing Hrg. Tr.).  Petitioner's counsel asserted that Petitioner became a member of MS-13 to protect his family, because in his community, "you were either with them or you [were] against them" and Petitioner wanted to "[keep] his family from being victims."  (Id., Doc. No. 1288 at 13).  Petitioner's counsel

2

described Petitioner's involvement as peripheral. (Id.). Petitioner also noted to this Court that he had completed the drug rehabilitation program since entering jail and that he had maintained consistent employment throughout his membership in MS-13. (Id. at 14). In response to these arguments, Government counsel noted that Petitioner was a leader of one of the MS-13 cliques and that he was present during key meetings and events. (Id. at 15-18).

Concerned that Petitioner may not understand the negative immigration consequences that could follow from his guilty plea, this Court specifically questioned Petitioner, asking him whether he understood that "there [might] be some adverse consequences to [his] guilty plea with respect to [his] immigration status," to which Petitioner responded, "[y]es." (Id. at 11). The Court then noted that, based on the testimony of some of Petitioner's co-defendants, that there was "[s]ubstantial evidence" that Petitioner was "an early leader, and someone who . . . from day one was involved selling drugs in the bathroom at various nightclubs." (Id. at 18). The Court noted that this drug-trafficking out of public bathrooms was central to the MS-13 gang and that Petitioner's individual acts, combined with the reasonably foreseeable acts of his co-conspirators, "demonstrate[d] a lack of respect for the law, a need to provide just punishment, promote respect for the law, deter other conduct of this type and importantly . . . to protect the public from further crimes [committed by Petitioner]." (Id. at 19). The Court then sentenced Ramos to 48 months in prison as to the racketeering conspiracy and drug-trafficking offenses, to be served concurrently, and a consecutive 60-month term as to the § 924(c) offense. (Id. at 20). The Court entered judgment on August 23, 2010. (Id., Doc. No. 1205; Judgment). Petitioner appealed, and the Fourth Circuit affirmed this Court's judgment, entering its mandate on December 12, 2011. United States v. Canales-Reyes, 454 F. App'x 208 (4th Cir. 2011).

Petitioner does not indicate when he placed the instant motion to vacate in the prison system for filing, but he signed the petition on June 11, 2012. See (Doc. No. 1 at 14). The petition was stamp-filed in this Court on June 14, 2012. (Doc. No. 1). In the motion to vacate, Petitioner brings as his sole claim of ineffective assistance of counsel that trial counsel was ineffective for failing to move for a mitigated status based on Petitioner's status as an illegal alien.

## II.     STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's Response, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To prevail on an ineffective assistance claim, a petitioner must show: (1) the petitioner's counsel performed below an objective standard of reasonableness, and (2) that petitioner suffered actual prejudice due to that deficient performance. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

To demonstrate actual prejudice, the petitioner must show a reasonable probability that, but for counsel's inadequate performance, the result of the proceedings would have been different. Strickland, 466 U.S. at 694. In considering the prejudice prong of the analysis, the Court cannot grant relief solely because Petitioner can prove that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Here, Petitioner argues that counsel improperly failed to request that the Court consider Petitioner's immigration status and the fact that he would not benefit from certain programs available to non-alien prisoners, including programs that enabled early release from the Bureau of Prisons. (Doc. 1 at 19, 21, 23). Specifically, Petitioner references the drug program within the Bureau of Prisons, which enables participants to receive up to one year of credit if they successfully complete the program, the availability of release to a halfway house for up to 18 months at the end of a prisoner's sentence, and the detention illegal immigrants experience after release from prison but while awaiting deportation. (Id.)

While Petitioner's counsel could have requested a lower sentence based on Petitioner's illegal alien status, as Petitioner acknowledges in his motion, "it is impossible to know whether the court would have exercised its discretion to mitigate the sentence," even if that argument had been presented. (Doc. No. 1 at 21). Thus, by Petitioner's own admission he cannot show that, but for counsel's failure to make this request, he would have received a lower sentence. See United States v. Moya, 676 F.3d 1211, 1214 (10th Cir. 2012) (rejecting an ineffective assistance of counsel claim based on counsel's failure to move for downward departure, where petitioner did not "provide[] any reason to believe that he could have . . . persuaded the district court to depart downward").

Additionally, while trial counsel did not request leniency because of Petitioner's immigration status, counsel made several arguments in favor of leniency for Petitioner based on his standing in the gang and the fact that he was not charged with some of the drug-trafficking and extortion offenses charged against some of his co-conspirators. These attempts for leniency further demonstrate that Petitioner's counsel adequately met the minimum standard of professional assistance Petitioner is required to receive. As such, Petitioner has not overcome the presumption that his counsel's tactical decisions at sentencing fell outside of the "wide range of reasonable professional assistance" to which counsel was entitled. See Strickland, 466 U.S. at 689. The Court finds Petitioner has failed to establish deficient representation or prejudice, and therefore Petitioner's claim of ineffective assistance of counsel fails as a matter of law.

### IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong)..

Signed: July 20, 2015

Robert J. Conrad, Jr.
United States District Judge